Docusign Envelope ID: D8FBB8A1-DDF6-4208-9568-E474BE479DEF

Pamela M. Egan (SBN 224758)
POTOMAC LAW GROUP, PLLC
2212 Queen Anne Ave., N., #836
Seattle, WA 98109
Tel.: (415) 297-0132
Fax: (202) 318-7707
Email: pegan@potomaclaw.com

Attorneys for BI Acquisition Co. LLC and
Barnes & Noble Booksellers, Inc.,

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re BOOKS INC., <br><br> Debtor-in-Possession. | Case No. 25-40087-WJL <br> Chapter 11 <br><br> **Declaration of Jason Stryker in Support of Debtor's Motions for Entry of Orders:** <br><br> **(1) Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman;** <br><br> **(2) Authorizing Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests, and Encumbrances;** <br><br> **(3) Authorizing Assumption, Assignment and Novation of Certain Executory Contracts and Unexpired Leases;** <br><br> **(4) Approving Bidding Procedures and Break-Up Fee; and** <br><br> **(5) Granting Related Relief** <br><br> <u>Hearing:</u> <br> Date: September 24, 2025 <br> Time: 10:30 a.m. <br> Place: United States Bankruptcy Court <br> Courtroom 220 <br> 1300 Clay Street <br> Oakland, CA 94612 <br> *Also via Zoom videoconference.* |

DECLARATION OF JASON STRYKER -- 1

Docusign Envelope ID: D8FBB8A1-DDF6-4208-9568-E474BE479DEF

I, Jason Stryker, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Head of Real Estate & Development of Barnes & Noble Booksellers, Inc. ("Barnes & Noble"). I have served in this capacity since February 2025. In that capacity, I am familiar with the negotiations with the Debtor leading to the Asset Purchase Agreement ("APA") attached to the Motion as Exhibit A. Further, in my capacity as Head of Real Estate & Development, I am also familiar with the financial condition, operational capabilities, and lease performance history of Barnes & Noble.

2. I submit this declaration in support of the above-captioned Motion seeking, inter alia, an order approving the sale of all or substantially all the assets of the Debtor to Barnes & Noble's wholly owned subsidiary.

3. All facts asserted in this Declaration are based on my personal knowledge, Barnes & Noble's books and records maintained in the ordinary course of business, and my experience in the retail bookstore industry.

4. Barnes & Noble is the largest brick-and-mortar bookseller in the United States, currently operating over six hundred (600) retail bookstores across all fifty states. It has been privately owned since 2019 by Elliot Advisors (UK) Limited, a global investment firm with approximately $60 billion in assets under management.

5. BI Acquisition Co. LLC ("Buyer") was formed in September 2025 as a Delaware limited liability company for the sole purpose of acquiring substantially all assets of the Debtor and continuing the Debtor's bookstore operations as a going concern. Buyer is wholly owned by Barnes & Noble. No officer, director, or equity holder of the Debtor holds any interest, direct or indirect, in Buyer or Barnes & Noble.

## ARM'S-LENGTH NEGOTIATIONS AND DUE DILIGENCE

6. In the Spring of 2025, I learned that the Debtor had commenced this case and was searching for a buyer of its assets. My team discussed with the Debtor's representatives the process, timeline and terms for such a purchase. On July 7, 2025, after preliminary due diligence, Barnes & Noble and the Debtor entered into a non-binding Letter of Intent to purchase the Debtor's assets for $3.25 million, subject to Court approval. Since then, Barnes & Noble has

DECLARATION OF JASON STRYKER -- 2

engaged in extensive, arm's-length negotiations with the Debtor and its advisors concerning a possible acquisition, as set forth more particularly below. The parties exchanged multiple drafts of term sheets, a non-binding letter of intent, and, ultimately, the APA.

7. Neither Barnes & Noble nor the Buyer has agreed with any other potential bidder or with the Debtor to control the purchase price or otherwise restrict competition.

8. Aside from hiring many of the Debtor's employees on commercially reasonable terms and otherwise engaging with the Debtor's personnel to facilitate an orderly transition, neither Barnes & Noble nor the Buyer anticipates having any ongoing relationship with the Debtor or its personnel following the sale.

9. No insiders of the Debtor are receiving any payment from the Buyer or Barnes & Noble other than the possibility of post-closing employment on commercially reasonable terms, and no payments or benefits will be provided outside of standard employment compensation, if any.

10. Apart from regular commercial relationships with certain book publishers and vendors that also supply inventory to the Debtor, neither Barnes & Noble nor the Buyer has a relationship with the Debtor's major creditors.

11. Prior to executing the APA, Barnes & Noble undertook substantial due diligence, including but not limited to:

 a. Review of the Debtor's financial statements, tax returns, and cash-flow reports;
 b. Site inspections of all ten retail locations, including the two San Francisco International Airport ("SFO") stores, and the San Leandro warehouse;
 c. Interviews with key members of the Debtor's management regarding operations, supply-chain relationships, inventory management, information-technology systems, and employee matters;
 d. Analysis of all unexpired real-property leases, contracts, permits and intellectual-property registrations;
 e. Engagement of outside counsel; and

DECLARATION OF JASON STRYKER -- 3

f. Assessment of integration costs, required capital expenditures, and projected synergies.

## FINANCIAL CAPABILITY AND ADEQUATE ASSURANCE

12. Buyer will fund the $3.25 million purchase price entirely with cash from Barnes & Noble's available corporate funds, and no financing contingencies exist under the APA.

13. Buyer is prepared to satisfy all post-closing obligations, including security deposits, lease bonds, and rental payments under assigned leases and executory contracts.

14. Barnes & Noble has successfully integrated other distressed acquisitions, including another subsidiary's 2024 purchase of the Tattered Cover bookstore chain out of Chapter 11, where Barnes & Noble continued operations, preserved jobs, and remained current on all assumed lease obligations. The case is captioned, *In re Bended Page, LLC*, and was filed in the U.S. Bankruptcy Court for the District of Colorado on October 16, 2023 as Case No. 23-14679-MER.

15. Upon request, Buyer is prepared to furnish landlords with documentation reasonably necessary to demonstrate Buyer's ability and assurance to perform under any assigned leases.

## ASSUMPTION OF RISK FOR THE ESTATE'S BENEFIT

16. Barnes & Noble has expended considerable effort and expense in negotiating the APA and participating in the bankruptcy process for Court approval of the proposed sale. At the Debtor's request, Barnes & Noble and Buyer agreed to subject the $3.25 million offer to higher and better offers without Court approval of bidding procedures or a break-up fee until the sale hearing scheduled for September 24, 2025. In doing so, Barnes & Noble and Buyer assumed the risk of being overbid after investing significant time and resources. The negotiated break-up fee of $150,000 (approximately 4.6% of the purchase price) was a material inducement for Barnes & Noble and Buyer to proceed under these unusual circumstances.

[*This Declaration continues on the next page.*]

DECLARATION OF JASON STRYKER -- 4

1     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on this 3rd day of September, 2025.

Signed by:<br>
*Jason Stryker*<br>
—D8AA6D0C7E994A5...<br>
Jason Stryker

DECLARATION OF JASON STRYKER -- 5