**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BOOKS INC., | Case No. 25-40087-WJL |
| Debtor-in-Possession. | |

<u>**CONSUMER PRIVACY OMBUDSMAN REPORT**</u>

Alan Chapell, Esq., CIPP
Chapell & Associates, LLC
92 Warren Street, #11, New York, NY 10007
Telephone:    (917) 318-8440
achapell@chapellassociates.com
Date: September 22, 2025

TABLE OF CONTENTS

Introduction .................................................................................................................1

Summary of Findings and Recommendation ..........................................................2

    Debtor's PII Collection and Processing ..............................................................3

    Additional Background Information ...................................................................3

    Recommendations .............................................................................................4

Applicable Consumer Privacy and Data Protection Laws .....................................5

    U.S. Federal Laws ...........................................................................................5

    Applicable U.S. State Laws .............................................................................12

    Non-U.S. Laws ................................................................................................16

The Debtor's Consumer Privacy Policies and Practices ......................................16

Factors to Be Considered......................................................................................17

Recommendations .................................................................................................18

# TABLE OF EXHIBITS

EXHIBIT A                        Books Inc. Privacy Policy September 2025
EXHIBIT B                        Books Inc. Privacy Policy April 2024
EXHIBIT C                        Books Inc. Privacy Policy December 2018
EXHIBIT D                        FTC v. Toysmart.com Proposed Stipulation and Settlement

Alan Chapell, the Consumer Privacy Ombudsman, duly appointed pursuant to section 332 of the Bankruptcy Code,[1] respectfully submits this Report to the Court and states:

## Introduction

1. On September 17, 2025, the United States Trustee filed the *Notice of Appointment of Consumer Privacy Ombudsman*, along with the Ombudsman's acceptance of appointment and verified statement of disinterestedness (Docket No. 94).

2. The Ombudsman has prepared this Report in accordance with Section 363(b)(1)(B) of the Bankruptcy Code to assist the Court in its consideration of the facts, circumstances, and conditions of the sale by Debtor of its customers' Personally Identifiable Information ("PII").

3. The purpose of this Report is to provide the Court with the information specified in section 332(b) of the Bankruptcy Code and to assist the Court in understanding the "applicable nonbankruptcy law" referenced in section 363(b)(1)(B)(ii) of the Bankruptcy Code.[2]

4. In preparing this Report, the Ombudsman has, among other things:

   a. Reviewed the Books Inc. privacy statement currently posted online at the Debtor's website, https://booksinc.net/, as well as two previously posted privacy statements via the Internet Archive at www.archive.org,  attached as **Exhibit A, Exhibit B, and Exhibit C**, respectively;

   b. Reviewed the Asset Purchase Agreement provided by Purchaser's counsel;

   c. Discussed via email, the Purchaser's intended use of Debtor's customer PII;

---

[1] 11 U.S.C. §332 (2006).

[2] Pursuant to the Bankruptcy Code, the Consumer Privacy Ombudsman may provide this Court with information relating to (1) the Debtor's privacy policy; (2) the potential losses or gains of privacy to consumers if a sale or lease is approved by the Court; (3) the potential costs or benefits to consumers if a sale or lease is approved by the Court; and (4) the potential alternatives that would mitigate potential privacy losses or potential costs to consumers. 11 USC § 332 (2006).

1

d.  Discussed, via email and telephone conversations with Debtor's counsel, Debtor's PII-collection activities, practices, and the structure of its databases;

e.  Discussed, via email and telephone conversations with Debtor's counsel, the nature of the data subject to transfer as part of this proceeding; and

f.  Researched applicable United States federal and state privacy laws.

### Summary of Findings and Recommendation

5.  It is the Consumer Privacy Ombudsman's understanding that Books Inc. (hereafter "Debtor" or "Books Inc.") seeks to transfer certain customer information to Bi Acquisition Co. LLC, a wholly owned subsidiary of Barnes & Noble Booksellers, Inc. (the "Purchaser"), and such customer information includes:

a.  Certain customer information obtained via Debtor's retail stores; and

b.  Certain customer information obtained via Debtor's websites (collectively "Websites"), including from the following URLs: Booksinc.net; Booksinc.com; Booksinc.biz and; compassbooks.com.

6.  The Consumer Privacy Ombudsman further understands that: (a) prior to close of the sale, Debtor will send each customer who is registered for Debtor's Frequent Reader program, a statement of the customer's current rewards account balance (each a "Points Balance Notice"), and (b) customers who wish to have their rewards points honored in Purchaser's rewards program may do so by presenting their Points Balance Notice to the any of Purchaser's retail stores after closing.

7.  It is the Consumer Privacy Ombudsman's further understanding that the only customer PII subject to transfer pursuant to the sale (i.e., customer name, email address, phone, customer

2

number & order number) will be used solely to fulfil pre-orders for products that will be released after the sale closes (the "Pre-Order PII").

## Debtor's PII Collection and Processing

8. Debtor collected "personally identifiable information" ("PII") as defined by Section 101(41A) of the Bankruptcy Code.[3]

9. Debtor generally collected the PII of US data subjects, and to the extent that Debtor knowingly is in possession of data collected from non-US data subjects, such data will not be subject to transfer pursuant to this proceeding.

10. Debtor collected, maintained and used the PII collected pursuant to a privacy policy that limits or restricts the transfer of such assets.

## Additional Background Information

11. In general, customer records which contain PII were collected at different times and under different privacy statements – as Debtor updated its privacy policies over time.

12. It is the Privacy Ombudsman's understanding that the Purchaser is a "Qualified Buyer" with respect to the PII that is transferred to and received by the Purchaser pursuant to this proceeding. A "Qualified Buyer" means an entity that: (i) concentrates in the same business and market as Debtor; (ii) expressly agrees to be Debtor's successor-in-interest as to the

---

[3] '[P]ersonally identifiable information' means—
    (A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes—
        ''(i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;
        ''(ii) the geographical address of a physical place of residence of such individual …"
11 U.S.C. §101(41A) (2006).

Case: 25-40087   Doc# 97   Filed: 09/22/25   Entered: 09/22/25 13:26:06   Page 6 of 48

customer information; (iii) agrees to be responsible for any violation of that policy following the date of purchase; and (iv) shall not disclose, sell, or transfer customers' PII to any third party in a manner inconsistent with Debtor's Privacy Policy.

## Recommendations

13. Based on the foregoing, the Ombudsman respectfully submits the following recommendations to the Court:

14. First, the Court should approve the sale of all Pre-Order PII from Debtor to Purchaser;

15. Second, in accordance with governing law permitting the transfer of PII, the Court should require that:

    a. The Purchaser shall represent to the Court that it is a Qualified Buyer with respect to the PII that is transferred to and received by the Purchaser pursuant to this proceeding;

    b. As the transfer of PII is to a "Qualified Buyer": A "Qualified Buyer" means an entity that: (i) concentrates in the same business and market as Debtor; (ii) expressly agrees to be Debtor's successor-in-interest as to the customer information; (iii) agrees to be responsible for any violation of that policy following the date of purchase; and (iv) shall not disclose, sell, or transfer customers' PII to any third party in a manner inconsistent with Debtor's Privacy Policy without obtaining each customer's prior affirmative ("Opt-in") consent.

16. Finally, the Order approving the sale of PII in this instance should also (i) require Purchaser to file with the Court a statement under oath that Purchaser is able to meet the definitional requirements of a Qualified Buyer.

## Applicable Consumer Privacy and Data Protection Laws

17. In the United States, the "privacy" of consumers' personally identifiable information has primarily been regulated by the Federal Trade Commission ("FTC") under the FTC Act, the Children's Online Privacy Protection Act of 1998 ("COPPA"), and the Gramm- Leach-Bliley Act ("GLBA"). There are a number of additional sectoral privacy laws which are not relevant to this proceeding. Over the past few years, various U.S. states have created their own privacy laws which may be relevant.

## U.S. Federal Laws

18. <u>The FTC Act</u> - Section 5 of the FTC Act declares unfair or deceptive practices in commerce as unlawful.[4] To determine whether section 5's prohibition against deception has been violated, the FTC will first identify what "express claims," and "implied claims," have been made by a company.[5] An "express claim" refers to a factual assertion made in an advertisement or promotion or other publicly available statement such as a corporate policy. An "implied claim" refers to the net impression conveyed by all elements of a company's policies or statements "including an evaluation of such factors as the entire document, the juxtaposition of various phrases in the document, the nature of the claim, and the nature of the transactions." Section 5 is violated when an express or implied claim is "likely to affect a consumer's choice of or conduct regarding a product" and is "likely to mislead reasonable consumers under the

---

[4] 15 USC §45 (2006).

[5] FTC Policy Statement on Deception, *appended to Cliffdale Associates, Inc.*, 103 FTC 110, 174 (1984), available at http://www.ftc.gov/bcp/policystmt/ad-decept.htm (last visited July 10, 2025).

Case: 25-40087    Doc# 97    Filed: 09/22/25    Entered: 09/22/25 13:26:06    Page 8 of 48

circumstances."[6]  In addition, an act or practice may be considered "unfair" if it causes, or is likely to cause, substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.[7]

19. The FTC has explicitly applied section 5's prohibitions against deceptive acts and practices to corporate privacy statements made on the Internet and elsewhere in over a dozen consent orders.[8] The FTC has also cited companies for collecting consumers' information and then retroactively changing a privacy policy to allow such company to share the information with third parties without notifying consumers or getting their consent.[9]

---

[6] *Id.*

[7] *See generally* FTC Policy Statement on Unfairness, *appended to International Harvester Co.*, 104 FTC 949, 1070 (1984) available at http://www.ftc.gov/bcp/policystmt/ad-unfair.htm (last visited July 10, 2025).

[8] *See, e.g., United States v. ChoicePoint, Inc.*, Stipulated Final Judgment and Order (N.D. Ga. 2006) available at http://www.ftc.gov/os/caselist/choicepoint/0523069stip.pdf (last visited July 10, 2025); *In the Matter of Vision I Properties d/b/a CartManager International,*, Agreement Containing Consent Order (FTC 2004) available at http://www.ftc.gov/os/caselist/0423068/050310agree0423068.pdf (last visited July 10, 2025); *In the Matter of Petco Animal Supplies, Inc.*, Decision and Order (FTC 2005) available at http://www.ftc.gov/os/caselist/0323221/050308do0323221.pdf (last viewed July 12, 2023); *In the Matter of Gateway Learning Corp.*, Decision and Order (FTC 2004) available at http://www.ftc.gov/os/caselist/0423047/040917do0423047.pdf (last visited July 10, 2025); *In the Matter of Tower Records*, Decision and Order (FTC 2004) available at http://www.ftc.gov/os/caselist/0323209/040602do0323209.pdf (last visited July 10, 2025); *In the Matter of Educational Research Center of America, Inc and Student Marketing Group, Inc.*, Decision and Order (FTC 2002) available at http://www.ftc.gov/os/2003/01/ercaconsent.htm (last viewed July 12, 2023); *In the Matter of the National Research Center for College and University Admissions, Inc.*, Decision and Order, (FTC 2003) available at http://www.ftc.gov/os/2003/01/nrccuamuncedo.htm (last visited July 10, 2025); *In the Matter of Microsoft Corporation*, Decision and Order (FTC 2002); *In the Matter of Eli Lilly and Company*, Decision and Order (FTC 2002) available at http://www.ftc.gov/os/2002/05/elilillydo.htm (last visited July 10, 2025); *FTC v. Reverseauction.com, Inc.*, Decision and Order (FTC 2000) available at http://www.ftc.gov/os/2000/01/reverseconsent.htm (last visited July 10, 2025); *In the Matter of Liberty Financial Co.*, Decision and Order (FTC 1999) available at http://www.ftc.gov/os/2000/01/reverseconsent.htm (last viewed July 18, 2009); *In the Matter of Geocities*, Decision and Order (FTC 1999) available at http://www.ftc.gov/1999/02/9823015.do.htm (last visited July 10, 2025).

[9] See, e.g., *Gateway Learning Corp.*, Decision and Order (FTC 2004) available at http://www.ftc.gov/os/caselist/0423047/040917do0423047.pdf (last visited July 10, 2025); and *In the Matter of 1HEALTH.IO INC., a corporation, also d/b/a VITAGENE, INC*. Consent Order https://www.ftc.gov/system/files/ftc_gov/pdf/decision_and_order.pdf (last viewed July 12, 2025).

20. The FTC order against *Toysmart* (discussed below and attached as **Exhibit D**) has particular significance here, as it brought about the amendment to the Bankruptcy Code that requires the appointment of the privacy ombudsman. As part of its settlement with Toysmart, the FTC noted the following: "[i]f the buyer wishes to make changes to that policy, it must follow certain procedures to protect consumers. It may not change how the information previously collected by Toysmart is used, unless it provides notice to consumers and obtains their affirmative consent ("opt-in") to the new uses."[10] In other words, the FTC position regarding a retroactive or material change to privacy practices is that such change would likely be actionable under Section 5 of the FTC Act unless opt-in consent were obtained.[11]

21. <u>The Privacy Policy Enforcement in Bankruptcy Act</u> , also known as the Leahy-Hatch Amendment ("PPEBA") is a federal law incorporated into the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Its purpose is to address concerns about the sale of personally identifiable information during bankruptcy proceedings, particularly when such sales contradict such company's existing privacy policies. The PPEBA effectively changed the Bankruptcy Code to create the position of Consumer Privacy Ombudsman and provide for the appointment of such Ombudsman where the debtor's privacy policy places restrictions on the debtor's ability to transfer such information.

---

[10] See the FTC press release announcing the Toysmart settlement at https://www.ftc.gov/news-events/news/press-releases/2000/07/ftc-announces-settlement-bankrupt-website-toysmartcom-regarding-alleged-privacy-policy-violations (last viewed July 12, 2025).

[11] One of the reasons the Ombudsman is not giving weight to Debtor's removal of certain privacy policy language around May of 2025 is that such changes could be viewed as material omissions.

22. The BAPCPA amendment to the Bankruptcy Code came as a result of the Federal Trade Commission's ("FTC") action against Toysmart.com, and incorporated aspects of the final (proposed) Stipulation and Order from that case. Some background on the Toysmart case might be helpful.

23. Toysmart Case. A casualty of the bursting of the Dot-Com bubble, Toysmart.com ("Toysmart") had been engaged in the advertising, promotion, and sale of toys on the Internet.[12] In the course of doing business, Toysmart collected information from its customers, including, among other things, its customers' names, addresses, billing information, and shopping preferences. Toysmart's website included a privacy policy which assured customers that Toysmart "never shared [its customers' PII] with a third party."[13]

24. When Toysmart sought to sell the PII of its customers as part of its Plan of Liquidation, in direct contravention of its privacy policy, the FTC charged Toysmart with engaging in a deceptive trade practice, in violation of Section 5 of the FTC Act,[14] and with violating COPPA,[15] because its customer data included the PII of children under the age of 13.

25. Although the FTC entered into a Stipulation and Settlement that would enable Toysmart to sell its customers' PII under certain conditions, forty-six (46) States' Attorneys General (and two of the FTC's own commissioners) objected, arguing that "never" (as represented in

---

[12] *See* First Amended Complaint, Civil Action No. 00-11341 at ¶ 6 (D. Mass. 2000) *available at* http://www.ftc.gov/os/2000/07/toysmartcomplaint.htm (last viewed July 10, 2025).

[13] *Id.* at ¶ 7.

[14] 15 U.S.C. §§45 *et seq.*

[15] Discussed below.

Toysmart's privacy policy) should mean "never" and that Toysmart should not be permitted to sell its customers' PII under any circumstances.[16]

26. Ultimately, Toysmart withdrew the sale, and one of its equity owners, Disney, paid $50,000 for the data and destroyed such data. The terms of the Stipulation and Settlement into which it had entered with the FTC established the criteria to determine the propriety of the transfer of customer PII assets in a bankruptcy proceeding, where the privacy policy does not address that situation and/or places restrictions on the debtor's ability to sell its PII.

27. The Stipulation and Settlement provided that Toysmart's customers' PII would be sold only to a "Qualified Buyer," an entity that (a) concentrates in the same business and market as Toysmart; (b) expressly agrees to be Toysmart's successor-in-interest as to the customer information; (c) agrees to be responsible for any violation of that policy following the date of purchase; (d) will use the PII only to fulfill customer orders and to personalize customers' experience on the website; and (e) shall not disclose, sell, or transfer customers' PII to any third party without giving the customers notice and an opportunity to opt-in to the transfer.[17] For the Court's convenience, a true and accurate copy of the FTC's proposed Stipulation and Settlement with Toysmart is attached hereto as **Exhibit D**.

28. The Qualified Buyer criteria have generally been followed in many subsequent bankruptcy cases.[18]

---

[16] The States' objections rested primarily upon their own "mini-FTC Acts," which prohibited deceptive acts or practices.

[17] *See* Stipulation and [Proposed] Order Establishing Conditions on Sale of Customer Information, Civil Action No. 00-13995 (Bkr. D. Mass. 2000) *available at* http://www.ftc.gov/os/2000/07/toysmarttbankruptcy.1.htm (last viewed July 11, 2018).

[18] In re Borders Group, Inc., No. 11-10614-mg (Bankr. S.D.N.Y.) (Glenn, J.), In re RadioShack Corporation, No. 15-10197 (BLS) (Bankr. D. Del.) (Shannon, J.); In re Choxi, 16-13131 (SCC) (Bankr. S.D.N.Y.) (Chapman, J.); In re Century 21 Department Stores, 20-12097 (Bankr. S.D.N.Y.) (Chapman, J.); In re KB US Holding 20-22962 (SHL) (Bankr. S.D.N.Y.) (Lane, J); In re MKJC Hyundai, 20-42283, (Bankr. S.D.N.Y.) (Mazer-Marino, J.); In re

29. <u>The Children's Online Privacy Protection Act</u> ("COPPA"). In addition to the FTC Act, COPPA prohibits unfair or deceptive acts or practices in connection with the collection, use, or disclosure of personally identifiable information from and about children under age 13 obtained via the Internet.[19] COPPA requires that companies that collect information from children provide notice on their websites concerning what information they collect, how they will use that information, and what disclosure practices they apply to that information.[20] COPPA also requires that regulated companies obtain verifiable parental consent prior to the collection of information from children.[21] Pursuant to the FTC's rules interpreting COPPA, a company must, among other things, obtain parental consent "to any material change in the collection, use, and/or disclosure practices to which the parent has previously consented."[22] The FTC has interpreted COPPA as also applying to operators of websites that have actual knowledge that they are "maintaining" PII from children.[23]

30. In operating the Websites, the Debtor meet the definition of an "operator," under both COPPA and the FTC's rule promulgated pursuant thereto. An "operator" under COPPA is "any person who operates a website located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such website or online service … where such website or online service is operated for commercial purposes,

---

Loot Crate, 19-11791-BLS (Bankr. D. DE) (Shannon, J.); In re NovaSom, 19-11734 (BLS) (Bankr. D. DE) (Shannon, J.); In re Hobbico, 18-10055 (KG) (Bankr. D. DE) (Gross J.); In re Circuit City Stores, 3:08-bk-35653 (Bankr. E.D. VA) (Huennekens, J.); In re Linens N Things, 08-10832 (CSS) (Bankr. D. DE) (Sontchi, J.)

[19] 15 U.S.C. § 6501, *et seq*. (2006); 16 C.F.R. § 312 (2006). *See also* Children's Online Privacy Protection Rule, Final Rule, 64 Fed. Reg. 59888 (Nov. 3, 1999) (explaining basis and purpose of the Act).

[20] 15 U.S.C. 6502(b)(1)(A) (2006); 16 C.F.R. § 312.3(a) (2006).

[21] 15 U.S.C. 6502(b)(1)(A) (2006);
[22] 16 C.F.R. § 312.5(a) (2006).

[23] 16 C.F.R. § 312.3 (2009).

including any person offering products or services for sale through that website or online service, involving [interstate] commerce …."[24]

31. Debtor's Websites contain pages on which consumers are able to enter PII such as their name and email address to create and edit an account profile. Debtor does not collect date of birth, and Debtor's account terms state that Debtor do not collect PII from persons under 18. In other words, the Ombudsman was unable to identify a scenario whereby Debtor could have knowingly collected PII from a child under 13.

32. Given that it is extremely unlikely that the FTC would view Debtor's Websites as "child-directed" under COPPA, and that Debtor do not knowingly collect PII from persons under 18, COPPA is not implicated under the proposed sale.


33. The Gramm-Leach-Bliley Act ("GLBA") regulates the privacy of personally identifiable, nonpublic financial information disclosed to non-affiliated third parties by financial institutions. Among other things, the GLBA requires that regulated companies notify consumers of their privacy policies and provide them with notice and the opportunity to opt-out of changes to those policies. The Debtor have provided no information to indicate that they are a financial institution under the GLBA. Nevertheless, the FTC's rules, regulations, and interpretation of when the GLBA requires notification and opt-out may be informative in this situation.

34. During the FTC's consideration of its Privacy of Consumer Financial

---

[24] 15 U.S.C.§6501(2)(A)(i) and 16 C.F.R. §312.2.

Information Rule, some entities that submitted comments requested guidance concerning "what notices are required in the event of a merger of two financial institutions or an acquisition of one financial institution by another."[25] In its comments on the final rule, the FTC indicated that in merger or acquisition scenarios:

> … [T]he need to provide new initial (and opt-out) notices to the customers of the entity that ceases to exist will depend on whether the notices previously given to those consumers accurately reflect the policies and practices of the surviving entity. If they do, the surviving entity will not be required under the rule to provide new notices.[26]

The FTC's interpretation of the GLBA as not requiring notice (and opt-out) in situations in which an acquirer adopts the policies and practices of the former company is consistent with the FTC's stipulation and decree in *Toysmart* as well as the Ombudsman's Recommendations to the Court.

## Applicable U.S. State Laws

35. <u>State Consumer Protection Laws</u>. Most states have consumer protection laws that are consistent with the FTC Act. Debtor's PII contains data on consumers in every U.S. state. If the proposed PII transfer satisfies the FTC transfer requirements, state consumer protection laws should likewise be satisfied.

36. <u>State Privacy Laws</u>. Several U.S. states have passed comprehensive privacy laws which are relevant to these proceedings, including but not limited to: California, Colorado, Connecticut, Delaware, Virginia and Utah.[27] These state privacy laws generally impose a

---

[25] Privacy of Consumer Financial Information, Final Rule, 65 Fed. Reg. 33660 (May 24, 2000).

[26] *Id.* at 33660-33661.

[27] *See* https://oag.ca.gov/privacy/ccpa (California), https://coag.gov/resources/colorado-privacy-act/ (Colorado),

notice and opt-out choice ruleset on the transfer or sale of non-sensitive personal information to third-parties. Moreover, a few of these state privacy laws contain provisions that contemplate the transfer of PII pursuant to a bankruptcy proceeding which may be relevant to this proceeding.

37. <u>California Consumer Privacy Act</u>. The California Consumer Privacy Act only considers the transfer of PII pursuant to a bankruptcy a "sale" of personal information in the event that the acquirer "materially alters how it uses or shares the personal information of a consumer in a manner that is materially inconsistent with the promises made at the time of collection…" and in such case "it shall provide prior notice of the new or changed practice to the consumer."[28]

38. Moreover, a recent enforcement action by California's Office of the Attorney General (OAG) has taken the position that the CCPA's "purpose limitation" principle could impose additional privacy requirements on a particular data set in the context of a sale of personal information.[29] The enforcement action, and the OAG's analysis of the purpose limitation principle may be relevant. The purpose limitation principle limits a businesses' use of personal information only for purposes for which it was collected, or for other purposes that are consistent with consumers' reasonable expectations.[30] In that way, the CCPA has been

---

https://portal.ct.gov/AG/Sections/Privacy/The-Connecticut-Data-Privacy-Act (Connecticut), https://legis.delaware.gov/BillDetail?LegislationId=140388 (Delaware), https://www.oag.state.va.us/consumer-protection/files/tips-and-info/Virginia-Consumer-Data-Protection-Act-Summary-2-2-23.pdf (Virginia), and https://le.utah.gov/~2022/bills/static/SB0227.html (Utah).

[28] *See* CCPA Section 1798.140(ah)(2)(c) at https://cppa.ca.gov/regulations/pdf/ccpa_statute.pdf (last visited on July 10, 2025).

[29] *See* CCPA Section 1798.100(a)(1) at https://cppa.ca.gov/regulations/pdf/ccpa_statute.pdf (last visited on July 16, 2025). "A business shall not collect additional categories of personal information or use personal information collected for additional purposes that are incompatible with the disclosed purpose for which the personal information was collected without providing the consumer with notice consistent with this section."

[30] See CCPA Regulations § 7002 https://cppa.ca.gov/regulations/pdf/20230329_final_regs_text.pdf (last visited on July 16, 2025) and The People of the State of California v. Healthline Media, LLC (CGC-25-626794) pages 7 & 8

interpreted by the OAG as to impose an opt-in consent standard where a potentially sensitive data set is used for a different purpose than under which it was collected – which is similar to a situation where data was transferred to an entity that does not meet the criteria of a Qualified Buyer.

39. <u>Colorado Privacy Act</u>. The Colorado Privacy Act (CPA) does not consider the transfer of PII pursuant to a bankruptcy to be a "sale" of personal data.[31] However, the CPA imposes a rather unique rule under the CPA Regulations - which requires that the acquirer maintain copies of data subject access requests for a period of 24 months.[32] However, the Debtor's counsel has represented that Debtor does not knowingly have PII of data subjects located in Colorado. And given that Debtor's business has focused on the California marketplace, it seems unlikely that Debtor has PII of data subjects located in Colorado. Accordingly, the Recommendations included in this Report do not include a reminder of the requirements set out in this provision of the CPA Regulations.

40. <u>Virginia Consumer Data Protection Act</u>. The Virginia Consumer Data Protection Act (VCDPA) also contemplates the transfer of data in the context of a bankruptcy proceeding. However, the VCDPA does not consider the transfer of PII pursuant to a bankruptcy as a "sale"

---

https://oag.ca.gov/system/files/attachments/press-docs/People%20v.%20Healthline%20Media%20Complaint.pdf (last visited on July 16, 2025).

[31] *See* CPA Section 6-1-1303 at https://coag.gov/app/uploads/2022/01/SB-21-190-CPA_Final.pdf (last visited on July 10, 2025). The transfer of PII pursuant to a bankruptcy is therefore not subject to the notice and choice requirements under the CPA.

[32] See CPA Regulations Rule 6.11(B) https://coag.gov/app/uploads/2023/03/FINAL-CLEAN-2023.03.15-Official-CPA-Rules.pdf  (last visited on July 10, 2025). "Controllers shall maintain a record of all Data Rights requests made pursuant to C.R.S. § 6-1-1306 with which the Controller has previously complied. Such records shall be retained for at least twenty-four (24) months and shall be made available at the completion of a merger, acquisition, bankruptcy, or other transaction in which a Third Party assumes control of Personal Data to ensure any new Controller continues to recognize the Consumer's previously exercised Data Rights."

of personal data as the term "sale" is defined under the VCDPA.[33]

41. <u>Overall</u>. Other than California's and Virginia's privacy rules, and Colorado's CPA requirement to store data subject access requests for 24 months, the scope of U.S. state privacy laws does not specifically address the transfer of personal information pursuant to a bankruptcy proceeding. However, these state laws nonetheless impose certain requirements upon entities that collect and otherwise process the personal information of consumers. These requirements include: (a) honoring data subject access, deletion, and (in some cases) correction rights,[34] (b) providing a privacy notice and opt-out choice regarding any sales of non-sensitive personal data,[35] (c) conducting privacy impact assessments,[36] and (d) the implementation of written data processing agreements.[37]

---

[33] See VCDPA *§ 59.1-575 at* *https://law.lis.virginia.gov/vacodefull/title59.1/chapter53/.*

[34] *See § 59.1-575 at* https://www.oag.state.va.us/consumer-protection/files/tips-and-info/Virginia-Consumer-Data-Protection-Act-Summary-2-2-23.pdf (last visited on July 10, 2025). For example, the Virginia Consumer Data Protection Act (VCDPA) allows for consumers to request that the controller of their personal data:
- Confirm if the controller is actually processing their personal data.
- Correct inaccuracies in the consumer's personal data that is collected by the controller.
- Delete personal data provided by or obtained about the consumer.
- Obtain copies of the personal data collected by the controller.
- Opt out of the processing of personal data for purposes of targeted advertising, the sale of personal data, or further profiling.

[35] *See* https://oag.ca.gov/privacy/ccpa#sectionb (last visited on July 16, 2025). The California Consumer Privacy Act (CCPA, as amended) requires that businesses provide a privacy notice and right to opt-out from the sale or sharing of personal information.

[36] *See* https://coag.gov/app/uploads/2023/01/CPA_Version-3-Proposed-Draft-Regulations-1.27.2023.pdf (last visited on July 10, 2025). The draft rules for the Colorado Privacy Act promulgated by the Colorado Attorney General's office states that: "A data protection assessment shall be a genuine, thoughtful analysis of each Processing activity that presents a heightened risk of harm to a Consumer, that: 1) identifies and describes the risks to the rights of consumers associated with the processing; 2) documents measures considered and taken to address and offset those risks, including those duties required by C.R.S. § 6-1-1308; 3) contemplates the benefits of the Processing; and 4) demonstrates that the benefits of the Processing outweigh the risks offset by safeguards in place.

[37] *See* https://cppa.ca.gov/regulations/pdf/20221102_mod_text.pdf (last visited on July 10, 2025). The California Consumer Privacy Act (CCPA, as amended) requires a written contract when personal data is shared in most circumstances.

15

42. More importantly, certain state laws (as well as the FTC) view "material changes" in privacy practices are requiring the consumer's affirmative opt-in consent. Fortunately, by ensuring that the sale of PII is to a Qualified Buyer, Debtor should eliminate the possibility of any FTC or state enforcement agency claiming that the sale / transfer of PII here constitutes a material change in privacy practices.

## Non-U.S. Laws

43. Debtor's counsel represented that Debtor did not knowingly collect the personally identifiable information of data subjects located outside of the United States, and that Debtor's digital properties were primarily directed to California consumers. Accordingly, the "applicable nonbankruptcy law"[38] does not include the data protection laws of non-U.S. countries.

## The Debtor's Consumer Privacy Policies and Practices

44.    A representative sample of Debtor's privacy statements are attached to this Report as **Exhibits A through C**. Debtor has made edits to its privacy policies over time. Overall, Debtor's privacy policies have not addressed the transfer of customer information in the context of a bankruptcy, merger or similar business transaction. Moreover, those policies promised that Debtor would not sell or otherwise transfer PII.[39] While the language restricting

---

[38] 11 USC §363(b)(1)(B)(ii) (2006)

[39] *See* **Exhibit B**. Debtor's privacy policy promises that "Our email list is for our use only. We do not sell or lend our lists to anyone for any reason."

Debtor from transferring PII (the "No Sale Language") was removed from Debtor's privacy policy recently, a search of the Internet Archive (https://archive.org/) reveals that this No Sale Language was still in the privacy policy as of May of 2025. The Consumer Privacy Ombudsman therefore takes the position that the overwhelming majority of Debtor's customers were exposed to the more restrictive No Sale Language. Accordingly, the Ombudsman is not considering the less restrictive privacy language as part of this analysis.

**Factors to Be Considered**

45. Bankruptcy Code Section 332 suggests at least four factors as to which the Ombudsman may inform the Court: (a) Debtor's privacy policy; (b) potential losses or gains of privacy to consumers if a sale is approved; (c) the potential costs or benefits to consumers if such sale is approved; and (d) potential alternatives that would mitigate potential privacy losses or potential costs to consumers.[40]

46. <u>Debtor's Privacy Policies</u> - As discussed above, Debtor's privacy policies do not address the transfer of data pursuant a bankruptcy proceeding – and promise not to sell or lend its lists to anyone for any reason. However, given that Purchaser is a Qualified Buyer with respect to Debtor's PII, the Debtor would not be viewed as violating its privacy policy promises by transferring the PII to Purchaser as completed here.


47. <u>Potential Losses, Gains and/or Costs to Privacy if the Sale is Approved</u> - Similarly, the transfer of PII contemplated here will have a minimal impact upon consumers given that the Purchaser is a Qualified Buyer. The transfer of PII to Purchaser would only result in a loss of

---

[40] 11 U.S.C. §332.

privacy to the consumers involved if Purchaser were to adopt significantly different privacy practices from that employed by Debtors. It's also worth noting that the contemplated use case with respect to the Pre-Order PII (defined above) is extremely narrow. Debtor's customers would be harmed if they were unable to receive the books they had paid for prior to the sale.

48. <u>Mitigating Potential Privacy Losses</u> - The best way in which to mitigate potential privacy losses to Debtor's customers is to require Purchaser to continue to meet consumers' privacy expectations. The general outline of those requirements has been provided in FTC enforcement actions, guidance and cases such as *Toysmart*. The proposed requirements with respect to Debtor's proposed transfer are set forth below.

## Recommendations

49. Based on the foregoing, the Ombudsman respectfully submits the following recommendations to the Court:

50. First, the Court should approve the sale of all Pre-Order PII from Debtor to Purchaser;

51. Second, in accordance with governing law permitting the transfer of PII, the Court should require that:

    a.  The Purchaser shall represent to the Court that it is a Qualified Buyer with respect to the PII that is transferred to and received by the Purchaser pursuant to this proceeding;

    b.  As the transfer of PII is to a "Qualified Buyer": A "Qualified Buyer" means an entity that: (i) concentrates in the same business and market as Debtor; (ii) expressly agrees to be Debtor's successor-in-interest as to the customer information; (iii) agrees to be responsible for any violation of that policy following the date of purchase; and (iv) shall not disclose, sell, or transfer customers' PII to any third party in a manner

Case: 25-40087   Doc# 97   Filed: 09/22/25   Entered: 09/22/25 13:26:06   Page 21 of 48

inconsistent with Debtor's Privacy Policy without obtaining each customer's prior affirmative ("Opt-in") consent.

52. Finally, the Order approving the sale of PII in this instance should also (i) require Purchaser to file with the Court a statement under oath that Purchaser is able to meet the definitional requirements of a Qualified Buyer.


Dated:          September 22, 2025


                                        _|s|Alan Chapell_
                                        ALAN CHAPELL

# Exhibit A







2

Books ⌄

Search for your next favorite book 🔍

At this time we are no longer processing online orders. Please check back following our transition to a new website later this month.

## PRIVACY POLICY

# What information do we collect?

We collect information from you when you register on our site, place an order, subscribe to our newsletter, respond to a survey or fill out a form. When ordering or registering on our site, as appropriate, you may be asked to enter your: name, e-mail address, mailing address, phone number or

credit card information. You may, however, visit our site anonymously.

# What do we use your information for?

Any of the information we collect from you may be used in one of the following ways

## To process transactions

Your information, whether public or private, will not be sold, exchanged, transferred, or given to any other company for any reason whatsoever, without your consent, other than for the express purpose of delivering the purchased product or service requested.

## To send periodic emails

The email address you provide for order processing will only be used to send you information and updates pertaining to your order.

# How do we protect your information?

We implement a variety of security measures to maintain the safety of your personal information when you place an order or enter, submit, or access your personal information.

We offer the use of a secure server. All supplied sensitive/credit information is transmitted via Secure Socket Layer (SSL) technology and then encrypted into our Payment gateway providers database only to be accessible by those authorized with special access rights to such systems, and are required to keep the information confidential. After a transaction, your private information (name, address, e-mail, etc.) may be kept on file for more

than 60 days in order to process future transactions. We do not store credit card numbers on our servers.

# Do we use cookies?

Yes (Cookies are small files that a site or its service provider transfers to your computer's hard drive through your Web browser (if you allow) that enables the sites or service providers systems to recognize your browser and capture and remember certain information. We use cookies to help us remember and process the items in your shopping cart.

# GDPR

# The identity and the contact details of the data controller

For services and websites used by residents of the European Economic Area, Books Inc. is the data

controller responsible for your personal data. For more information please contact us at [weborders@booksinc.net](mailto:weborders@booksinc.net).

# The contact details of the data protection officer or EU representative

For specific issues relating to this privacy policy, please contact our Data Protection Officer/EU representative at: The West's Oldest Independent Bookseller, [aperham@booksinc.net](mailto:aperham@booksinc.net), 4156433400.

# The legal basis for the processing

We will have a lawful basis for processing your data when:

1. We need to process your information in order to provide you with the products or service you have requested or to enter into a contract;

2. We have a legitimate interest for processing your data – e.g., for fraud prevention; network and information systems security; data analytics; enhancing, modifying, or improving our services; identifying usage trends; determining the effectiveness of promotional campaigns; and advertising personalization of the service using data to make it easier and faster for you to place orders;

3. You have consented to such processing; and/or

4. We are required to do this by law (for example, where it is necessary to retain it in connection with potential litigation).

# Information on the transfer of personal data to a third country or international organization

Books Inc. is a global business and it, or its service providers, may process, transfer, and store information about our users on servers located in a number of countries outside the European Economic Area (EEA), including in the United States (where data protection laws may be less stringent than in the country where you live).  Since we are committed to protecting your information, we take steps to ensure that there are appropriate safeguards in place when we transfer that data.

To ensure that your data is adequately protected, we only transfer your data subject to suitable safeguards being in place. Where applicable, we only transfer your personal data subject to suitable safeguards being in place, such as through Privacy Shield certified organizations. To find out more about how we safeguard your information (including obtaining a copy of such safeguards) in relation to transfers outside the EEA, please contact us at weborders@booksinc.net.

# The period for which the personal data will be stored or the criteria used to determine that period

Books Inc. will keep your personal data for as long as we need it for the purpose it is being processed for. For example, we will retain your information for as long as your account is active or as needed to provide you services; and after that, we will keep the personal information for a period which enables us to handle or respond to any complaints, queries or concerns relating to your account.  Your information may also be retained so that we can continue to improve your experience with us and to ensure that you receive any loyalty rewards which are due to you.  We will periodically review the personal information we hold and delete it securely, or in some cases anonymize it, when there is no longer a legal, business, or consumer need for it to be retained.

# The existence of data subject rights

If you live in the European Economic Area (EEA), you have a number of rights when it comes to your personal data.  If you wish to exercise these rights with regards to your personal data that we hold, please contact us at [weborders@booksinc.net](mailto:weborders@booksinc.net). Further information and advice about your rights can be obtained from the data protection regulator in your country.  These include:

- The right to be provided with clear, transparent and easily understandable information about how we use your information and your rights (which is why we are providing you with the information in this Policy).

- The right to obtain access to your information (if we are processing it).

- The right to have your information corrected if it is inaccurate or incomplete.  You can do this

through your account page or by contacting us.

- The right to "block" or suppress further use of your information. When processing is restricted, we can still store your information, but may not use it further. We keep lists of people who have asked for further use of their information to be 'blocked' to make sure the restriction is respected in future.

- The right to request that we delete or remove your data where there is no compelling reason for us to keep using it. This is not a general right to erasure; there are exceptions

- The right to request that we transfer or port elements of your data either to you or another service provider.

- The right to object to certain types of processing, including processing for direct marketing (i.e., if you no longer want to be contacted with potential opportunities).

- If you have given your consent to anything we do with your personal data, you have the right to withdraw your consent at any time.

- You also have the right to lodge a complaint about the way we handle or process your personal data with your national data protection regulator.

Pursuant to applicable data protection law, we may be entitled to refuse to act on the request.  To make these requests with Books Inc., please submit your name, address, and email address, in addition to the specifics of your request, to [weborders@booksinc.net](mailto:weborders@booksinc.net).

# About

Our History

The Team

Store Info & Hours

# Exhibit B

Log In (/web/20240424084901/https://booksinc.net/user?destination=node/33178)

(https://web.archive.org/web/20240424084901/http://www.facebook.com/BooksIncCentral)

(https://web.archive.org/web/20240424084901/http://www.twitter.com/BooksIncStores)

(https://web.archive.org/web/20240424084901/http://www.instagram.com/booksincstores)

(https://web.archive.org/web/20240424084901/mailto:weborders@booksinc.net)



(/web/20240424084901/https://booksinc.net/)

Title, author or keyword...

Advanced Search (/web/20240424084901/https://booksinc.net/search/advanced_search)

0 Items                                                          **Total:** $0.00

☰

# Privacy Policy

### MAILING LIST PRIVACY POLICY

Our email list is for our use only. We do not sell or lend our lists to anyone for any reason. You may stop mailings by clicking unsubscribe at any time and you will not be contacted or added back.

### WEBSITE PRIVACY & SECURITY

We use sophisticated encryption and authentication tools to protect the security of your personal information that you share with us. Unfortunately, however, no data transmission over the Internet can be guaranteed to be 100% secure. As a result, while we strive to protect your personal information, we

cannot guarantee or warrant the security of any information you transmit to or from our web site, and you do so at your own risk. Once we receive your transmission, we will do our best to protect its security on our systems .

## THE IDENTITY AND THE CONTACT DETAILS OF THE DATA CONTROLLER

For services and websites used by residents of the European Economic Area, www.booksinc.net is the data controller responsible for your personal data. For more information please contact us at [weborders@booksinc.net].

(https://web.archive.org/web/20240424084901/mailto:weborders@booksinc.net?subject=Privacy)

## THE LEGAL BASIS FOR THE PROCESSING

We will have a lawful basis for processing your data when:

1. We need to process your information in order to provide you with the products or service you have requested or to enter into a contract;

2. We have a legitimate interest for processing your data – e.g., for fraud prevention; network and information systems security; data analytics; enhancing, modifying, or improving our services; identifying usage trends; determining the effectiveness of promotional campaigns; and advertising personalization of the service using data to make it easier and faster for you to place orders;

3. You have consented to such processing; and/or

4. We are required to do this by law (for example, where it is necessary to retain it in connection with potential litigation).

## INFORMATION ON THE TRANSFER OF PERSONAL DATA TO A THIRD COUNTRY OR INTERNATIONAL ORGANIZATION

www.booksinc.net is a global business and it, or its service providers, may process, transfer, and store information about our users on servers located in a number of countries outside the European Economic Area (EEA), including in the United States (where data protection laws may be less stringent than in the country where you live).  Since we are committed to protecting your information, we take steps to ensure that there are appropriate safeguards in place when we transfer that data. To ensure that your data is adequately protected, we only transfer your data subject to suitable safeguards being in place. Where applicable, we only transfer your personal data subject to suitable safeguards being in place, such as through [the use of approved standard EU Model Clauses or to companies who are Privacy Shield certified].   To find out more about how we safeguard your information in relation to transfers outside the EEA, please contact us at [weborders@booksinc.net]. (https://web.archive.org/web/20240424084901/mailto:weborders@booksinc.net?subject=Privacy)

## THE PERIOD FOR WHICH THE PERSONAL DATA WILL BE STORED OR THE CRITERIA USED TO DETERMINE THAT PERIOD

www.booksinc.net will keep your personal data for as long as we need it for the purpose it is being processed for. For example, we will retain your information for as long as your account is active or as needed to provide you services; and after that, we will keep the personal information for a period which enables us to handle or respond to any complaints, queries or concerns relating to your account.  Your information may also be retained so that we can continue to improve your experience with us and to ensure that you receive any loyalty rewards which are due to you.  We will periodically review the personal information we hold and delete it securely, or in some cases anonymize it, when there is no longer a legal, business, or consumer need for it to be retained.

## THE EXISTANCE OF DATE RIGHTS

If you live in the European Economic Area (EEA), you have a number of rights when it comes to your personal data.  If you wish to exercise these rights with regards to your personal data that we hold, please contact us at [weborders@booksinc.net] (https://web.archive.org/web/20240424084901/mailto:weborders@booksinc.net?subject=Privacy%20Update). Further information and advice about your rights can be obtained from the data protection regulator in your country.  These include:

• The right to be provided with clear, transparent and easily understandable information about how we use your information and your rights (which is why we are providing you with the information in this Policy).

• The right to obtain access to your information (if we are processing it).

• The right to have your information corrected if it is inaccurate or incomplete.  You can do this through your account page or by contacting us.

• The right to "block" or suppress further use of your information. When processing is restricted, we can still store your information, but may not use it further.  We keep lists of people who have asked for further use of their information to be 'blocked' to make sure the restriction is respected in future.

• The right to request that we delete or remove your data where there is no compelling reason for us to keep using it.  This is not a general right to erasure; there are exceptions

• The right to request that we transfer or port elements of your data either to you or another service provider.

• The right to object to certain types of processing, including processing for direct marketing (i.e., if you no longer want to be contacted with potential opportunities).

• If you have given your consent to anything we do with your personal data, you have the right to



withdraw your consent at any time.

- You also have the right to lodge a complaint about the way we handle or process your personal data with your national data protection regulator.

Pursuant to applicable data protection law, we may be entitled to refuse to act on the request. To make these requests, please submit your name, address, and email address, in addition to the specifics of your request, to [weborders@booksinc.net]. (https://web.archive.org/web/20240424084901/mailto:weborders@booksinc.net?body=Privacy%20Update)

---

‹ Information and FAQ's                              up
(/web/20240424084901/https://booksinc.net/411)    (/web/20240424084901/https://booksinc.net/411)

---

Return to Top (https://web.archive.org/web/20240424084901/http://www.booksinc.net/)

About Us (https://web.archive.org/web/20240424084901/http://booksinc.net/about-us)

Authors & Publishers

(https://web.archive.org/web/20240424084901/http://booksinc.net/411#authors)

Customer Service

(https://web.archive.org/web/20240424084901/http://booksinc.net/411#service)    FAQ

(https://web.archive.org/web/20240424084901/http://booksinc.net/411)    Gift Cards

(https://web.archive.org/web/20240424084901/https://www.booksinc.net/gift-cards-

available)    Privacy & Security

(https://web.archive.org/web/20240424084901/http://booksinc.net/411#privacy)    Store Info

& Hours (https://web.archive.org/web/20240424084901/http://booksinc.net/storeinfomobile)

eBooks (https://web.archive.org/web/20240424084901/http://booksinc.net/Kobo)

Audiobooks

(https://web.archive.org/web/20240424084901/https://www.booksinc.net/librofm)

Newsletter Signup

(https://web.archive.org/web/20240424084901/https://www.booksinc.net/join-community)

# Exhibit C

0 Items  **Total:** $0.00

# BOOKS INC.
### The West's Oldest Independent Bookseller

(/web/20181203085223/https://booksinc.net/)

## Search form

Title, Author, ISBN                                    SEARCH

Advanced Search (/web/20181203085223/https://booksinc.net/search/advanced_search)

≡

# Privacy Policy

**MAILING LIST PRIVACY POLICY**
Our email list is for our use only. We do not sell or lend our lists to anyone for any reason. You may stop mailings by clicking unsubscribe at any time and you will not be contacted or added back.

**WEBSITE PRIVACY & SECURITY**
We use sophisticated encryption and authentication tools to protect the security of your personal information that you share with us. Unfortunately, however, no data transmission over the Internet can be guaranteed to be 100% secure. As a result, while we strive to protect your personal information, we cannot guarantee or warrant the security of any information you transmit to or from our web site, and you do so at your own risk. Once we receive your transmission, we will do our best to protect its security on our systems .

**THE IDENTITY AND THE CONTACT DETAILS OF THE DATA CONTROLLER**
For services and websites used by residents of the European Economic Area, www.booksinc.net is the data controller responsible for your personal data. For more information please contact us at [weborders@booksinc.net].
(https://web.archive.org/web/20181203085223/mailto:weborders@booksinc.net?subject=Privacy)

**THE LEGAL BASIS FOR THE PROCESSING**
We will have a lawful basis for processing your data when:
1. We need to process your information in order to provide you with the products or service you have requested or to enter into a contract;
2. We have a legitimate interest for processing your data – e.g., for fraud prevention; network and information systems security; data analytics; enhancing, modifying, or improving our services; identifying usage trends; determining the effectiveness of promotional campaigns; and advertising personalization of the service using data to make it easier and faster for you to place orders;
3. You have consented to such processing; and/or
4. We are required to do this by law (for example, where it is necessary to retain it in connection with potential litigation).

**INFORMATION ON THE TRANSFER OF PERSONAL DATA TO A THIRD COUNTRY OR INTERNATIONAL ORGANIZATION**
www.booksinc.net is a global business and it, or its service providers, may process, transfer, and store information about our users on servers located in a number of countries outside the European Economic Area (EEA), including the United States (where data protection laws may be less stringent than in the country where you live).  Since we are committed to protecting your information, we take steps to ensure that there are appropriate safeguards in place when we transfer that data.

To ensure that your data is adequately protected, we only transfer your data subject to suitable safeguards being in place. Where applicable, we only transfer your personal data subject to suitable safeguards being in place, such as through [the use of approved standard EU Model



safeguard your information in relation to transfers outside the EEA, please contact us at [weborders@booksinc.net]. (https://web.archive.org/web/20181203085223/mailto:weborders@booksinc.net?subject=Privacy)

**THE PERIOD FOR WHICH THE PERSONAL DATA WILL BE STORED OR THE CRITERIA USED TO DETERMINE THAT PERIOD**

www.booksinc.net will keep your personal data for as long as we need it for the purpose it is being processed for. For example, we will retain your information for as long as your account is active or as needed to provide you services; and after that, we will keep the personal information for a period which enables us to handle or respond to any complaints, queries or concerns relating to your account. Your information may also be retained so that we can continue to improve your experience with us and to ensure that you receive any loyalty rewards which are due to you. We will periodically review the personal information we hold and delete it securely, or in some cases anonymize it, when there is no longer a legal, business, or consumer need for it to be retained.

**THE EXISTANCE OF DATE RIGHTS**

If you live in the European Economic Area (EEA), you have a number of rights when it comes to your personal data. If you wish to exercise these rights with regards to your personal data that we hold, please contact us at [weborders@booksinc.net] (https://web.archive.org/web/20181203085223/mailto:weborders@booksinc.net?subject=Privacy%20Update). Further information and advice about your rights can be obtained from the data protection regulator in your country. These include:

• The right to be provided with clear, transparent and easily understandable information about how we use your information and your rights (which is why we are providing you with the information in this Policy).
• The right to obtain access to your information (if we are processing it).
• The right to have your information corrected if it is inaccurate or incomplete. You can do this through your account page or by contacting us.
• The right to "block" or suppress further use of your information. When processing is restricted, we can still store your information, but may not use it further. We keep lists of people who have asked for further use of their information to be 'blocked' to make sure the restriction is respected in future.
• The right to request that we delete or remove your data where there is no compelling reason for us to keep using it. This is not a general right to erasure; there are exceptions
• The right to request that we transfer or port elements of your data either to you or another service provider.
• The right to object to certain types of processing, including processing for direct marketing (i.e., if you no longer want to be contacted with potential opportunities).
• If you have given your consent to anything we do with your personal data, you have the right to withdraw your consent at any time.
• You also have the right to lodge a complaint about the way we handle or process your personal data with your national data protection regulator.

Pursuant to applicable data protection law, we may be entitled to refuse to act on the request. To make these requests, please submit your name, address, and email address, in addition to the specifics of your request, to [weborders@booksinc.net]. (https://web.archive.org/web/20181203085223/mailto:weborders@booksinc.net?body=Privacy%20Update)

(https://web.archive.org/web/20181203085223/https://booksinc.net/#facebook)

(https://web.archive.org/web/20181203085223/https://booksinc.net/#twitter)

(https://web.archive.org/web/20181203085223/https://booksinc.net/#tumblr)
(https://web.archive.org/web/20181203085556/https://www.addtoany.com/share#url=https%3A%2F%2Fweb.archive.org%...policy&title=Privacy%20Policy)

‹ Information and FAQ's                    up
(/web/20181203085223/https://booksinc.net/44)      (/web/20181203085223/https://booksinc.net/411)

# Exhibit D

In re:

**TOYSMART.COM, LLC, Debtor.**

**Chapter 11**
**Case No. 00-13995-CJK**

**STIPULATION AND ORDER ESTABLISHING CONDITIONS
ON SALE OF CUSTOMER INFORMATION**

This Stipulation is entered into this twentieth day of July, 2000, by and between, Toysmart.com, LLC, debtor and debtor-in-possession ("Debtor" or "Toysmart"), and the Federal Trade Commission ("FTC").[1]

WHEREAS, on June 9, 2000, an involuntary petition was commenced against the Debtor under chapter 11 of 11 U.S.C. § 101, et seq. ("Code"). On June 23, 2000, the Debtor filed a consent to the order for relief under chapter 11 of the Code;

WHEREAS, the Debtor is a Delaware limited liability corporation involved in the "e-tail" business. The Debtor has, among other things, advertised, promoted, and sold toys on the Internet including through its Web site www.toysmart.com;

WHEREAS, the FTC is an independent agency of the United States government created pursuant to 15 U.S.C. § 41, et seq. ("FTC Act"). The FTC enforces § 5(a) of the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce;

WHEREAS, the Debtor has collected personal customer information including, but not limited to, consumers' names, addresses, billing information, shopping preferences, and family profile information;

WHEREAS, from at least September 1999 to July 2000, the Debtor's Web site included a privacy statement ("Privacy Statement") stating that (1) "Personal information voluntarily submitted by visitors to our site, such as name, address, billing information and shopping preferences, is never shared with a third party. All information obtained by toysmart.com is used only to personalize your experience online," and (2) "When you register with toysmart.com, you can rest assured that your information will never be shared with a third party;"

---

[1] The FTC assents to this Court's jurisdiction solely for purposes of approval of this Stipulation. Should this Stipulation not be approved by the Bankruptcy Court, the FTC reserves the right to take all actions as it deems necessary and appropriate to protect its exercise of police and regulatory powers.

Case: 25-40087    Doc# 97    Filed: 09/22/25    Entered: 09/22/25 13:26:06    Page 44 of 48

WHEREAS, on or about May 22, 2000, the Debtor announced that it had ceased operations and began to offer for sale customer information through advertisements appearing in the Wall Street Journal and the Boston Globe and through its Web site;

WHEREAS, on June 29, 2000, the Debtor filed the Debtor's Motion For Authority To Sell Assets (Excluding Inventory) By Public Sale Free And Clear Of Liens, Claims And Encumbrances ("Sale Motion") and related pleadings. Pursuant to the Sale Motion, the Debtor, among other things, seeks to sell a group of assets set forth in Category C and entitled "Web Site Applications, Names, Customer List, and Product Databases" consisting of the Debtor's right, title and interest in customer information, including contents of its customer databases including detailed customer lists and related information, as well as names, trademarks, goodwill, URL names, Web site source code, and data base schemas without content and publishable content located on its Web site (each and together, the "Goodwill"); and

WHEREAS, the FTC has filed a complaint in the United States District Court for the District of Massachusetts, Federal Trade Commission v. Toysmart.com, LLC, Civil Action No. 00-11341-RGS, which alleges that the proposed sale of the customer information would constitute a deceptive act or practice in or affecting commerce under § 5(a) of the FTC Act; and

WHEREAS, the Debtor disputes the FTC's allegations and further responds that it has never violated the Privacy Statement, but in any event, seeks to resolve this matter so as to preserve the value of the Debtor's assets for the benefit of its creditors.

**NOW THEREFORE**, in an effort to resolve this matter without further cost or delay, the parties hereby agree, subject only to the approval of this Court, as follows:

For the purposes of this Agreement, the following definitions shall apply:

>"Qualified Buyer" shall mean an entity that (1) concentrates its business in the family commerce market, involving the areas of education, toys, learning, home and/or instruction, including commerce, content, product and services, and (2) expressly agrees to be Toysmart's successor-in-interest as to the Customer Information, and expressly agrees to the obligations set forth in Paragraphs 2, 3 and 4, below. Nothing herein, however, shall create any liability for such Qualified Buyer as a result of any actions or omissions by the Debtor, as the Customer Information is to be sold free and clear of all liens, claims and encumbrances, except for the Qualified Buyer's obligations under the Privacy Statement.

"Customer Information" shall mean information of or relating to consumers collected by the Debtor, including, but not limited to, name, address, billing information, shopping preferences, order history, gift registry selection, family profile information about consumers' children, such as name, gender, birthday, and toy interests.

"Third Party" shall mean any individual, firm, or organization other than the Qualified Buyer and its successors, except to the extent that disclosure of Customer Information to such an individual, firm, or organization is necessary to maintain the technical

Case: 25-40087    Doc# 97    Filed: 09/22/25    Entered: 09/22/25 13:26:06    Page 45 of 48

functioning of the Toysmart Web site or customer databases, or to fulfill a consumer's request. "Third Party" includes any affiliates of the Qualified Buyer.

"Privacy Statement" shall mean the privacy statement posted on the Toysmart Web site from at least September 1999 to July 2000, the terms of which are included in full in Exhibit 1.

The Debtor shall only assign or sell its Customer Information as part of the sale of its Goodwill and only to a Qualified Buyer approved by the Bankruptcy Court. In the process of approving any sale of the Customer Information, the Bankruptcy Court shall require that the Qualified Buyer agree to and comply with the terms of this Stipulation.

The Qualified Buyer shall treat Customer Information in accordance with the terms of the Privacy Statement and shall be responsible for any violation by it following the date of purchase. Among other things, the Qualified Buyer shall use Customer Information only to fulfill customer orders and to personalize customers' experience on the Web site, and shall not disclose, sell or transfer Customer Information to any Third Party.

If the Qualified Buyer materially changes the Privacy Statement, prior notice will be posted on the Web site. Any such material change in policy shall apply only to information collected following the change in policy. The Customer Information shall be governed by the Privacy Statement, unless the consumer provides affirmative consent ("opt-in") to the previously collected information being governed by the new policy.

In the event that an order is not entered on or before July 31, 2001, approving the sale of the Customer Information to a Qualified Buyer or approving a plan of reorganization, the Debtor shall, on or before August 31, 2001, delete or destroy all Customer Information in its possession, custody or control, and provide written confirmation to the FTC, sworn to under penalty of perjury, that all such Customer Information has been deleted or destroyed. Pending approval of any sale of the Customer Information to a Qualified Buyer or of a plan of reorganization, the Debtor shall handle Customer Information in accordance with the Privacy Statement.

This Stipulation and Order, after approval by the Bankruptcy Court, shall be attached to and incorporated in full into the terms of any plan of liquidation or reorganization that is ultimately approved in this bankruptcy case.

|  |  |
|---|---|
| | Harold B. Murphy (BBO #567781) |
| Of Counsel: | Alex M. Rodolakis (BBO #567781) |
| | Hanify & King |
| Jeanne M. Crouse | One Federal Street |
| Counsel for Bankruptcy & Redress | Boston, MA 02110 |
| Washington, DC 20580 | (617) 423-0400 |
| (202) 326-3312 | |

By its Attorneys,

FEDERAL TRADE COMMISSION            600 Pennsylvania Ave., NW
Debra A. Valentine,                 Washington, DC 20580
General Counsel,                    (202) 326-3424/(202) 326-3296
Federal Trade Commission

                                    TOYSMART.COM, LLC
Laura Mazzarella
Ellen Finn                          David N. Lord
Federal Trade Commission            Chief Executive Officer

**IT IS SO ORDERED.**

Entered at Boston, Massachusetts, this ___ day of July, 2000.


_____
Honorable Carol J. Kenner
United States Bankruptcy Judge

# EXHIBIT 1

### PRIVACY STATEMENT

**Our promise**

At toysmart.com, we take great pride in our relationships with our customers and pledge to maintain your privacy while visiting our site. Personal information voluntarily submitted by visitors to our site, such as name, address, billing information and shopping preferences, is never shared with a third party. All information obtained by toysmart.com is used only to personalize your experience online. This information is received via the following areas of our site: My toysmart and the Gift Center. When you place additional orders, our site will update your order history, which you can view in My toysmart. If you sign up for the gift registry, information you submit will be added to your personal profile. Other than these two instances, the information that you provide us is not supplemented in any way.

**Your option**

If you do not wish to receive emails containing promotional offers or contests from toysmart.com, please click the box located at the bottom of the "My toysmart" registration page. If you are already registered and would like to opt-out of such promotional offers, please go to "My toysmart," click on the "My Profile" icon, and unselect the email option located at the bottom of the page. When you register with toysmart.com, you can rest assured that your information will never be shared with a third party.

**Editing your personal information**

If you would like to edit your personal information, please click on the "My toysmart" button located on the top of our homepage. Then, simply click on the "My Profile" icon and update any of your information.

**Contests**

toysmart.com is committed to protecting the privacy of all children who enter contests on our site. We request only the child's first name and age be sent with the contest entry. We email every child's parent with notification that his or her child has entered the contest. Only winners' parents will be sent a release form, which requests a shipping

Case: 25-40087   Doc# 97   Filed: 09/22/25   Entered: 09/22/25 13:26:06   Page 47 of 48

address as well a permission request to post the winning entry on our site. No entries will be posted without a parent or guardian's permission, and no prizes will be sent without written consent from the parent or guardian.

**Your information is safe with us!**

All personal information is encrypted on a separate server. Also, we give you the option of further securing your information with the use of a password. To create a personal password, simply go to "My toysmart." Shopping with toysmart.com is guaranteed to be 100% safe. That means we will guarantee your protection against any liability if unauthorized charges are made to your card as a result of shopping at toysmart.com. Simply stated, you are guaranteed a safe and secure transaction every time you shop with us. Visit our "[Security](http://www.toysmart.com/toysmart/ts_cs_security.asp)" ([http://www.toysmart.com/toysmart/ts_cs_security.asp](http://www.toysmart.com/toysmart/ts_cs_security.asp)) section for more details.

Questions regarding this statement should be directed to [support@toysmart.com](mailto:support@toysmart.com).

Case: 25-40087    Doc# 97    Filed: 09/22/25    Entered: 09/22/25 13:26:06    Page 48 of 48