1  Stephen D. Finestone (125675)
   Ryan A. Witthans (301432)
2  FINESTONE HAYES LLP
   456 Montgomery Street, Suite 1300
3  San Francisco, CA 94104
   Tel.:   (415) 481-5481
4  Fax:    (415) 398-2820
   Email: sfinestone@fhlawllp.com
5  Email: rwitthans@fhlawllp.com

6  Counsel for Books Inc.,
   Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In re BOOKS INC.,<br><br>Debtor-in-Possession. | Case No. 25-40087-WJL<br>Chapter 11<br><br>**Supplemental Declaration of Andrew Perham in Support of Debtor's Motions for Entry of Orders:**<br><br>**(1) Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman;**<br><br>**(2) Authorizing Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests, and Encumbrances;**<br><br>**(3) Authorizing Assumption, Assignment, and Novation of Certain Executory Contracts and Unexpired Leases;**<br><br>**(4) Approving Bidding Procedures and Break-Up Fee; and**<br><br>**(5) Granting Related Relief.**<br><br>Hearing:<br>Date:  September 24, 2025<br>Time:  10:30 a.m.<br>Place: United States Bankruptcy Court<br>       Courtroom 220<br>       1300 Clay Street<br>       Oakland, CA 94612<br>       *Also via Zoom videoconference.* |

SUPPLEMENTAL PERHAM DECLARATION                                                                                       1

I, Andrew Perham, declare as follows:

1. I am the chief executive officer of Books Inc. (the "Debtor"). I make this supplemental declaration in support of *Debtor's Motions for Entry of Orders: (1) Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman; (2) Authorizing Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (3) Authorizing Assumption, Assignment, and Novation of Certain Executory Contracts and Unexpired Leases; (4) Approving Bidding Procedures and Break-Up Fee; and (5) Granting Related Relief* (collectively, the "Motion").

2. All statements in this declaration are based on my own personal knowledge and observation, or upon information and belief based upon my review of the Debtor's business records in this case. If called to testify on this matter, I could and would competently testify to the matters set forth herein.

3. All capitalized terms used herein and not otherwise defined in this declaration will have the meanings set forth in the Motion.

### I. Debtor's continued marketing efforts

4. Following the filing of the Motion, the Debtor continued its marketing efforts to maximize value for the estate. I personally notified each party that had expressed interest earlier in the process but declined to continue. I provided them with copies of the Motion, notice of hearing, and other relevant information regarding the proposed sale, including notice of the opportunity to submit an overbid pursuant to the proposed Bidding Procedures.

5. Pursuant to the Bidding Procedures, to qualify, a Prospective Bidder must provide certain documents, representations, and acknowledgments at least two days prior to the hearing. As of the date of this supplemental declaration, no party has stepped forward to indicate an interest in becoming a Prospective Bidder, or a willingness to submit an overbid.

6. Based on these results, I believe that the Buyer's offer represents the highest and best available offer for substantially all of the Debtor's assets. I further believe that proceeding with the sale as proposed is in the best interests of the estate and its creditors.

## II. Updated APA terms regarding PII

7. As initially proposed, the APA contemplated that certain customer PII (including name, email address, phone number, loyalty program balance, marketing list preferences, order history, etc.) would be transferred to the Buyer, subject to those customers having affirmatively consented to such transfer.

8. After the filing of the Motion, the Debtor and the Buyer revised the APA such that the customer database and loyalty program information will not be transferred. The only customer data to be transferred consists of information related to pre-orders that are open and have not been fulfilled as of the closing date, for the purpose of completing those transactions.

9. Loyalty program members will now receive a statement of their account balance prior to closing. They may present that statement post-closing to redeem their balance with the Buyer, at which point they may enroll in the Buyer's rewards program if they so choose.

10. Customers who wish to join the Buyer's rewards program will provide their information directly to the Buyer, alleviating privacy concerns. As such, I believe that the revised APA terms are consistent with the Debtor's privacy policy in effect on the Petition Date. I further believe that customers would be harmed if the sale was not completed with the above-described revisions, as pre-ordering customers would be unable to receive the books they paid for prior to the sale.

11. I am informed and believe that the Consumer Privacy Ombudsman appointed by the United States Trustee has reviewed the proposed transaction and supports approval of the sale as set forth in the *Consumer Privacy Ombudsman Report* filed on September 22, 2025, as Docket No. 97. I am further informed and believe, based on discussion with the Buyer's counsel and on the ombudsman's report, that the Buyer is a "Qualified Buyer" as the term is defined in the report.

12. A redlined version of the APA showing the above-described revisions is attached as **Exhibit A** to this declaration.

### III. Updated lease cure payments

13. The Debtor has updated information regarding lease cure payments. The cure payment related to the SFO Airport leases was originally listed as $0, but it has been updated to approximately $27,883.28 based on information provided by the SFO Airport. This discrepancy arose from the SFO Airport's method of calculating rent, which includes a percentage of gross sales, as well as contractual charges for electricity, trash, internet, and other costs and fees.

14. Based on currently available information, and including the updated SFO Airport lease cure payment, the Debtor estimates that total lease cure payments will be approximately $110,345.67.

* * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 23, 2025.

                                                           */s/ Andrew Perham*
                                                          Andrew Perham