Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:   (415) 481-5481
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Counsel for Books Inc.,
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re BOOKS INC.,<br><br>Debtor-in-Possession. | Case No. 25-40087-WJL<br>Chapter 11<br><br>**MOTION TO COMPROMISE CONTROVERSY WITH STEPHEN D. MAYER**<br><br>Hearing:<br>*No hearing requested. Notice of motion and opportunity for hearing served pursuant to B.L.R. 9014-1(b)(3).*[1] |

Debtor-in-possession Books Inc. (the "Debtor") respectfully submits this motion (the "Motion") pursuant to § 105(a), Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(3) for entry of an order approving a compromise with Stephen D. Mayer ("Mr. Mayer"). This Motion is supported by the concurrently filed declaration of Andrew Perham and by the record in this case.

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

MOTION TO COMPROMISE CONTROVERSY                                                        1

## I. BACKGROUND

### A. General Background

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 20, 2025. Docket No. 1. The Debtor's bankruptcy schedules listed a $500,000 debt to Mr. Mayer secured by a fourth-position lien on all assets of the Debtor. Docket No. 1 at 27.

Mr. Mayer is a director, 31.1% equity holder, and insider of the Debtor. Over at least the past 20 years, Mr. Mayer has guaranteed debts and, if necessary, the leases of the Debtor, and on numerous occasions he lent the Debtor money at favorable terms to ensure it had sufficient working capital.

The scheduled $500,000 debt arises from loan advances made under a promissory note dated April 26, 2024, between the Debtor and Mr. Mayer, the purpose of which was to support the Debtor's ongoing business operations. The promissory note is in a principal amount of up to $750,000, secured by "all assets" of the Debtor. The note bears interest at a rate of 8% per annum. A true and correct copy of the promissory note is attached as **Exhibit A** to the supporting declaration of Andrew Perham.

Mr. Mayer relied on the Debtor to perfect his security interest, which was accomplished by a UCC-1 financing statement filed with the California Secretary of State on May 28, 2024, describing a lien on "all cash, inventory, accounts receivable, trademarks, and fixed assets" of the Debtor. A true and correct copy of the financing statement is attached as **Exhibit B** to the supporting declaration of Andrew Perham.

The following loan advances and repayments were made under the note:

| Description | Date | Amount | Balance |
|---|---|---|---|
| Loan advance | April 2024 | $300,000 | $300,000 |
| Loan advance | July 2024 | $100,000 | $400,000 |
| Repayment | August 2024 | ($100,000) | $300,000 |
| Loan advance | September 2024 | $150,000 | $450,000 |
| Loan advance | October 2024 | $50,000 | $500,000 |

Case: 25-40087    Doc# 110    Filed: 11/11/25    Entered: 11/11/25 10:48:47    Page 2 of 7

B. <u>Potential Avoidance Claims</u>

During its review of pre-petition claims, the Debtor identified a potential cause of action against Mr. Mayer for an avoidable preferential transfer related to the pre-petition loan. Under § 547(b), a transfer is an avoidable preferential transfer if it was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days pre-petition, or one year if the creditor was an insider; and (5) that enabled the creditor to receive more than such creditor would receive in a hypothetical Chapter 7 case absent the transfer.

The perfection of Mr. Mayer's security interest on May 28, 2024, constituted a "transfer" for the benefit of a creditor, on account of antecedent debt represented by the $300,000 advance dated April 26, 2024.[2] Because Mr. Mayer is an insider, the applicable lookback period is one year. This is not a surplus case, so Mr. Mayer's security interest would result in him receiving more in a hypothetical Chapter 7 than if his claim was unsecured. Thus, the Debtor's preliminary analysis showed that, except for the element of Debtor's insolvency at the time of the transfer, all elements of § 547(b) could be established.

Accordingly, the central factual issue in any avoidance litigation would be whether the Debtor was insolvent as of May 28, 2024, when Mr. Mayer's security interest was perfected.

C. <u>Sale of Assets, Payment, and Holdback</u>

The Debtor sold substantially all of its assets as a going concern to a subsidiary of Barnes & Noble Booksellers, Inc. ("Barnes & Noble") for $3.25 million. The sale closed on October 1, 2025. Following the sale, Barnes & Noble acquired the business and continued operating the Debtor's bookstores while retaining most of its 77 employees.

---

[2] Section 547(e)(2) provides a 30-day grace period during which perfection of a security interest is deemed to occur at the time of the underlying transfer. Because Mr. Mayer's UCC-1 financing statement was filed 32 days after the $300,000 advance, the grace period does not apply, and perfection is deemed to have been made after the advance. Consequently, the lien securing the April 26, 2024, advance constitutes a transfer "for or on account of an antecedent debt" within the meaning of § 547(b)(2).

MOTION TO COMPROMISE CONTROVERSY                                          3

Pursuant to this Court's order authorizing the sale entered October 1, 2025, the Debtor was authorized to pay secured creditors to the extent it did not dispute or anticipate disputing the amount of the secured claims. Docket No. 103 at ¶ 5. Mr. Mayer's secured debt, including accrued interest, totaled $530,820. By agreement between the Debtor and Mr. Mayer, the Debtor withheld $75,000 from the amount otherwise payable to Mr. Mayer pending resolution of the potential preference dispute. The Debtor distributed $455,820 to Mr. Mayer and the parties agreed to address the holdback through a compromise to be approved by this Court.

Mr. Mayer also extended a separate $200,000 post-petition loan to the Debtor, which was repaid from the sale proceeds as an administrative claim. Docket No. 76 (motion to approve post-petition loan); Docket No. 81 (loan approval order); Docket No. 103 at ¶ 5 (sale order provision authorizing repayment). Mr. Mayer received $201,952, including interest, for repayment of this post-petition loan, which is separate and not a part of this compromise motion.

## II. COMPROMISE TERMS

Under the proposed compromise, the parties agree as follows:

1.  The $75,000 holdback shall constitute a voluntary reduction of Mr. Mayer's secured claim in full and final satisfaction of any claims or causes of action that the Debtor, the estate, or any successor in interest may have against Mr. Mayer relating to his $300,000 advance on April 26, 2024, and the later perfection of his security interest.

2.  The payment of $455,820 already made to Mr. Mayer shall constitute full satisfaction of the Debtor's obligations on account of Mr. Mayer's pre-petition secured claim.

## III. LEGAL ARGUMENT

Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The Debtor, as debtor-in-possession, has the powers of a trustee to seek such approval. § 1107(a).

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986); *cert. denied sub nom Martin v. Robinson*, 479 U.S. 854 (1986). Bankruptcy courts have great latitude in

MOTION TO COMPROMISE CONTROVERSY                                                    4

approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. A compromise may be approved only if it is "fair and equitable." *A & C Properties*, 784 F.2d at 1381. In approving a proposed compromise in bankruptcy proceedings, a court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). A court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417. Although the Debtor bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Debtor believes in its reasonable business judgment that the proposed compromise is fair and equitable and that it fulfills the *A & C Properties* factors.

A. <u>Probability of Success</u>

The Debtor's potential avoidance claim under § 547(b) depends primarily on whether the Debtor was insolvent as of May 28, 2024. The Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation." § 101(32). Courts apply a two-step process, first determining whether the debtor is a going concern, and then applying a balance-sheet test to determine solvency. *In re DAK Indus.*, 170 F.3d 1197, 1199–1200 (9th Cir. 1999).

The Debtor's books and records indicate that its solvency at that time is a close question, hinging on subjective and fact-intensive valuation judgments. Significant components of the Debtor's business, such as its brand value, goodwill, and customer relationships, were difficult to

Case: 25-40087    Doc# 110    Filed: 11/11/25    Entered: 11/11/25 10:48:47    Page 5 of 7

quantify but contributed meaningfully to its going-concern value. This point is evidenced by the $3.25 million paid by Barnes & Noble, which amount was approximately three times the value of the Debtor's inventory. The Debtor had also begun negotiating rent concessions and lease modifications that reduced long-term liabilities and improved the strength of its balance sheet.

While the Debtor ultimately sold its business for $3.25 million, that transaction occurred months later, after significant external changes including unforeseen disruptions due to construction at the San Francisco International Airport that sharply reduced revenue at the Debtor's historically strongest stores. Those events, discussed in detail in the Debtor's previous filings, eroded value after the Debtor filed for bankruptcy and do not indicate solvency or insolvency as of May 28, 2024. *See*, *e.g.*, Docket No. 59 (status conference statement indicating airport disruptions); Docket No. 73 (status conference statement indicating decision to sell); Docket No. 88 (sale motion).

Given these uncertainties, the Debtor recognizes that success in any avoidance litigation would be speculative. The Debtor might prevail, but only after a costly, expert-driven dispute over solvency and valuation.

### B.  Difficulty of Collection

This factor is neutral. This matter concerns a payment already made to Mr. Mayer, so collection is not at issue.

### C.  Complexity of Litigation, Expense, Inconvenience, and Delay

This factor weighs strongly in favor of approval. Litigation would be highly fact-intensive and require expert analysis of fair valuation, going-concern adjustments, and the treatment of intangible business assets. Litigating these issues would consume substantial estate resources and delay distributions to creditors. Even if successful, the estate's net recovery could easily be offset by the attorneys' and experts' fees necessary to establish insolvency. The Debtor reasonably concluded that the incremental benefit of litigating such a close and uncertain issue did not justify the expense and risk involved.

MOTION TO COMPROMISE CONTROVERSY                                        6

### D. Paramount Interest of Creditors

This factor also supports approval. The Debtor has completed the sale of its business, and there is now a fixed pool of sale proceeds available for distribution under the forthcoming plan of liquidation. The proposed compromise preserves estate resources by avoiding costly and risky litigation while capturing a $75,000 voluntary reduction from Mr. Mayer's secured claim, which is an immediate and quantifiable benefit to the estate and its creditors. Moreover, by way of this compromise, Mr. Mayer waives any unsecured claim related to the pre-petition loan.

## IV. CONCLUSION

In summary, the Debtor submits that the proposed compromise is fair and equitable, is within the range of reasonableness, and, in the Debtor's reasonable business judgment, is in the best interests of the bankruptcy estate and its creditors. For the reasons stated above, the Debtor requests entry of an order granting this Motion and approving the compromise.

Dated November 10, 2025

FINESTONE HAYES LLP

_/s/ Ryan A. Witthans_
Ryan A. Witthans
Counsel for Books Inc.,
Debtor-in-Possession

MOTION TO COMPROMISE CONTROVERSY 7

Case: 25-40087    Doc# 110    Filed: 11/11/25    Entered: 11/11/25 10:48:47    Page 7 of 7